SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

----------------------------------------------------------------------X

SHAYNA S. TYLER,

Index No:
Date Filed:

Plaintiff designates
KINGS COUNTY

Plaintiff,

-against-

The basis of the venue is:
Place where cause of action
arose

SUMMONS

NEW YORK CITY HOUSING AUTHORITY and
DOUGLAS STOKES,

The plaintiff resides at:
Kings County, New York

Defendant.

----------------------------------------------------------------------X

To the above named defendant(s):

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance on the Plaintiff's Attorney within twenty days after the service of this summons,
exclusive of the day of service (or within thirty (30) days after the service is complete if this
summons is not personally delivered to you within the State of New York); and in case of your
failure to appear, judgment will be taken against you by default for the relief demanded in the
complaint set forth below.

Dated: Brooklyn, New York
        July 25, 2018

Yours, etc.

LAW OFFICES OF WALE MOSAKU, P.C.

BY: WALE MOSAKU
Attorney for Plaintiff(s)
25 Bond Street, 3rd Floor
Brooklyn, New York 11201
(718) 243-0994

New York City Housing Authority and Douglas Stokes
Defendants
250 Broadway
New York, New York 10007

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------X Index No.

SHAYNA S. TYLER,

Plaintiff,

-against-

COMPLAINT

NEW YORK CITY HOUSING AUTHORITY and
DOUGLAS STOKES,

Defendants.

-------------------------------------------------------------------X

SHAYNA S. TYLER (hereinafter "plaintiff"), by her attorney(s) THE LAW OFFICES
OF WALE MOSAKU, P.C., complaining of the defendants NEW YORK CITY
HOUSING AUTHORITY (hereinafter referred to as "NYCHA") and DOUGLAS
STOKES (hereinafter referred to as "Stokes"), upon information and belief, alleges as
follows:

## NATURE OF THE ACTION

1.     The plaintiff brings this action to remedy discrimination and
harassment on the basis of sex and gender in the terms, conditions,
and privileges of employment; and in retaliation for the exercise of
rights, all in violation of Title VII of the Civil Rights Act of 1964 as
amended, 42 U.S.C. § 2000e *et seq.* (hereinafter referred to as "Title
VII"); the Civil Rights Act of 1866, 42 U.S.C. §1981 (hereinafter
referred to as "§1981"); the New York State Human Rights Law,
Executive Law §269 *et seq.* (hereinafter referred to as "Human
Rights Law"); and the New York City Civil Rights Law, New York
City Administrative Code § 8-107 *et seq.* (hereinafter referred to as
"City Law").

2.     Plaintiff seeks injunctive and declaratory relief, compensatory and
punitive damages, and other appropriate legal and equitable relief
pursuant to Title VII, §1981, Human Rights Law, and the City Law.

## SATISFACTION OF THE PROCEDURAL PREREQUISITES FOR SUIT

3.  Plaintiff has complied with all the procedural prerequisites required by law prior to initiating this action.

4.  On or about April 18, 2017, the plaintiff filed a "Charge of Discrimination" (hereinafter "Charge") against the defendant NYCHA with the Equal Employment Opportunity Commission (hereinafter referred to as "EEOC"). The charge was timely filed pursuant to Title VII, §2000e-5(e), and designated with the following EEOC charge number: 520-2017-02362.

5.  On or about May 9, 2018, plaintiff's attorney(s) received a *"Notice of Right to Sue Within 90 Days"* dated May 1, 2018 (hereinafter "Right to Sue letter") from the EEOC.

6.  Within the Right to Sue letter, the EEOC informed the plaintiff, *inter alia*, that "...*suit must be filed in the appropriate Court within 90 days of your receipt of this Notice*".

7.  The plaintiff is thus timely in filing this action.

## THE PARTIES

8.  At all times material to this complaint, the plaintiff was, and she still is, a resident of the City of New York, who at all times material and relevant to the complaint resided, and still resides, in Kings County, City and State of New York. Plaintiff is an African American female of full age.

9.  At all relevant times hereinafter mentioned plaintiff was an employee of NYCHA within the meaning of Title VII, §1981, Human Rights Law, and the City Law.

10. Plaintiff was and is, by virtue of the above-referenced laws, protected against discrimination and harassment in employment on the basis of sex and/or gender, in that at all relevant times, the plaintiff was (and still is) a female person, and as such, a member of recognized and protected categories.

2

Case 1:18-cv-04788 Document 1-2 Filed 08/21/18 Page 4 of 13 PageID #: 8
NYSCEF DOC. NO. 1

INDEX NO. 515265/2018

RECEIVED NYSCEF: 07/26/2018

11. Furthermore, plaintiff was and is, by virtue of the above-referenced laws, protected against discriminatory retaliation for protesting discrimination and harassment in employment on the basis of sex and/or gender.

12. At all times hereinafter mentioned, NYCHA was, and still is a public corporation duly organized and existing under the laws of the State of New York (as set forth in §66 of the General Construction Law).

13. At all times hereinafter mentioned, NYCHA was, and still is an employer within the meaning of Title VII, §1981, Human Rights Law, and the City Law, and at all relevant times employed and still employs more than five hundred (500) employees.

14. NYCHA has a place of business located at 250 Broadway, New York, New York 10007.

15. At all times hereinafter mentioned, NYCHA was, and still is, by virtue of the aforementioned laws, prohibited from discriminating in employment decisions on the basis of sex and/or gender.

16. At all times hereinafter mentioned, NYCHA was, and still is, by virtue of the aforementioned laws, prohibited from retaliating against its employees, including the plaintiff, for their/her exercise of rights protesting discrimination and harassment in employment on the basis of sex and/or gender.

17. At all times hereinafter mentioned, STOKES was and still is, upon information and belief, an adult male, and an employee, servant, agent, representative and/or Manager of defendant NYCHA.

18. STOKES is an employer within the meaning of Title VII, §1981, Human Rights Law, and the City Law, and is subject to said statutes.

19. STOKES is individually named in this suit for the purposes of effecting in full the compensatory, declaratory and injunctive relief demanded by plaintiff.

20. At all times hereinafter mentioned, defendant STOKES was, and still is, by virtue of the aforementioned laws, prohibited from

3

discriminating in employment decisions on the basis of sex and/or gender.

21. At all times hereinafter mentioned, defendant STOKES was, and still is, by virtue of the aforementioned laws, prohibited from retaliating against his employees/co-workers/subordinates, including the plaintiff, for their/her exercise of rights protesting discrimination and harassment in employment on the basis of sex and/or gender.

22. At all relevant times hereinafter mentioned plaintiff performed her duties and tasks in a reasonable, satisfactory, and efficient manner.

## FACTUAL ALLEGATIONS

23. On or about February 1, 2016, the plaintiff was hired/employed by NYCHA as a "Caretaker 'J' (Janitorial)", and was assigned to NYCHA's Ingersoll Houses located at 120 Navy Walk, Brooklyn, New York 11201.

24. The discriminatory behavior against the plaintiff commenced on or about April of 2016. At that time her work pants had split down the middle at the back. When one of the plaintiff's supervisors named Hiram Mendez (who was a "Supervisor of Caretakers") observed said pants, he stated to the plaintiff that *"your ass shouldn't be so big"*.

25. Subsequently, on May 13, 2016, the plaintiff had received an unsolicited gift of flowers from a male who used to hang around the Ingersoll Houses.

26. Defendant Stokes (at the time the "Superintendent" of the Ingersoll Houses) observed said flowers, and asked the plaintiff if he could read the note that came with the flowers.

27. The plaintiff permitted Stokes to read the note, after which he informed the plaintiff that the reason that she must have received said flowers was because *"you must have some good pussy"*.

28. The plaintiff, offended at Stokes above-referenced inappropriate language, immediately reported said comment to another supervisor

4

Case 1:18-cv-04770 Document 1-2 Filed 08/21/18 Page 6 of 13 PageID #: 10
INDEX NO. 515265/2018

RECEIVED NYSCEF: 07/26/2018

named Jacob (Jay) Young (whose title was "Supervisor of Grounds) who was subordinate to Mr. Stokes.

29.     Pursuant to NYCHA's Department of Equal Opportunity's ("DEO") rules and procedures, Mr. Young was supposed to have forwarded the plaintiff's complaint to the DEO office, but failed and/or refused to do so.

30.     Thereafter Stokes continued his discriminatory and harassing behavior towards the plaintiff, and subjected her to close monitoring, particularly when he observed any of the male tenants of Ingersoll Houses conversing or communicating with her, at which point, out of jealousy, he would berate or admonish the plaintiff in the presence of said tenants.

31.     Stokes never exhibited such behavior when he observed the plaintiff to be conversing or communicating with any female tenant of Ingersoll Houses.

32.     At the time the plaintiff started working with NYCHA and was assigned to the Ingersoll Houses, she was not assigned to clean any of the specific buildings within the Ingersoll Houses. In other words, the plaintiff was a "floater".

33.     However Stokes, as part of his harassing and discriminatory behavior, reassigned a female worker (named Christina Jenkins) who was assigned to specific buildings that were directly opposite the administrative building (120 Navy Walk, Brooklyn, New York 11201), specifically 160 Navy Walk, Brooklyn, New York 11201; 162 Navy Walk, Brooklyn, New York 11201; and 342 Navy Walk, Brooklyn, New York 11201, and assigned the plaintiff to clean those buildings.

34.     Once Stokes had re-assigned the plaintiff as set forth above, he was able to observe the plaintiff every day from the main administrative building after she arrived for work, and would then go and bother the plaintiff by trying to engage in small talk, including but not limited to

5

talking about inappropriate personal matters that had nothing to do with the plaintiff's job or the workplace, such as his relationship with his wife.

35. Stokes would also invite the plaintiff to Karaoke night, and on another occasion, a comedy show.

36. All of the above-mentioned attention from Stokes was unwanted and unsolicited by the plaintiff, and she informed Stokes that his attention was making her feel uncomfortable at the workplace.

37. One of the plaintiff's co-workers, namely Brandon Downing, from time to time, would give the plaintiff a ride home on his motorcycle. When Stokes observed that, he would get jealous and subject Mr. Downing to inappropriate and unwarranted disciplinary behavior.

38. The harassing behavior by Stokes continued on many occasions, until approximately August or September of 2016, when during a meeting with Stokes, he came to the belief that a male technician was looking at her. When said person left the meeting, Stokes informed the plaintiff that he had seen how that person was *"ogling"* her, and stated to her that *"you should have stuck your ass out "*.

39. Offended at that comment, the plaintiff immediately reported said comment to Jacob Young, who again did nothing.

40. A month later, after the harassing and discriminatory behavior from Stokes continued and in fact intensified, the plaintiff informed another supervisor, namely Hiram Mendez, of Stokes behavior, and let Mr. Mendez know that she could no longer tolerate Stokes' behavior anymore, as it was now amounting to what she considered to be mental torture.

41. Mr. Mendez then requested a meeting with the Property Manager, namely Mr. Winans (who was the overall supervisor of the Ingersoll Houses).

6

42.     A meeting subsequently took place on a certain date with Mr. Winans, the plaintiff, and her union representative, namely Mr. King, at approximately 10:00 a.m. on the appointed day.

43.     At the meeting, the plaintiff reported everything that had been going on between herself and Stokes, as set forth above, to Mr. Winans. In response, Mr. Winans told the plaintiff that he would "*handle it*", and that he would investigate her complaints.

44.     At approximately 03:00 p.m. on the same day the plaintiff had made the above-referenced complaint to Mr. Winans, she received a "memo" (write up) from an Assistant Superintendent (a subordinate of Mr. Winans), namely Mr. Wade, purportedly written by Mr. Jacob Young (who was not the plaintiff's direct supervisor at the time) in which it was claimed she had been late three times in two months (in fact, pursuant to procedure, a memo should have been issued only if the plaintiff was late three times in one month).

45.     It was at this juncture that the plaintiff personally contacted the DEO office, on the same day she received the above-referenced memo, to formally file a complaint against Stokes.

46.     After the plaintiff filed the above-referenced complaint, she was informed by the DEO that an investigation would be commenced.

47.     However, everything went further downhill from the time the plaintiff filed the complaint with the DEO in terms of adverse employment action that she experienced.

48.     For instance, at some point Mr. Mendez and Stokes actually went into the female locker room that the plaintiff was within, and confronted her aggressively. At that juncture the plaintiff, feeling threatened, filed a complaint with the NYPD by calling "911" to report the incident.

49.     On January 20, 2017, the plaintiff was terminated from her employment with NYCHA as a "Caretaker 'J' (Janitorial)" for pre-textual reasons. Mr. Winans informed the plaintiff of her termination.

7

50.  After the plaintiff's above-referenced termination, by letter dated Apr.l 10, 2017, she received a letter from the DEO informing her that *"no probable cause"* was found with respect to the complaint(s) she had filed.

## CAUSE(S) OF ACTION: TITLE VII AND § 1981 DISCRIMINATION

51.  By this reference, the plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 50 of this complaint as though fully set forth herein.

52.  By the acts and practices described herein, defendants have discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex and gender in violation of Title VII and §1981.

53.  In taking the above-described discriminatory actions, defendants acted with malice and/or reckless indifference to plaintiff's rights under Title VII and §1981.

54.  As a result of defendants' discriminatory acts, plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other monetary damages unless and until this Court grants relief.

55.  Defendant NYCHA is liable for the misconduct and above-described acts of its agents (including but not limited to defendant Stokes). under the doctrine of respondeat superior and vicarious liability.

## CAUSE OF ACTION: HUMAN RIGHTS LAW DISCRIMINATION

56.  By this reference, the plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 55 of this complaint as though fully set forth herein.

57.  By subjecting plaintiff to discrimination on the basis of her sex and gender, the defendants violated §296 of the Executive Law of the State of New York.

58.  In taking the above-described discriminatory actions, the defendants acted with malice and/or reckless indifference to plaintiff's rights under the Human Rights Law

8

59.    As a result of the defendants' discriminatory acts, plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other monetary damages unless and until this Court grants relief.

60.    The defendant NYCHA is liable for the misconduct and above-described acts of its agents (including but not limited to defendant Stokes) under the doctrine of respondeat superior and vicarious liability.

## CAUSE OF ACTION: CITY LAW DISCRIMINATION

61.    By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 60 of this complaint as though fully set forth herein.

62.    By subjecting plaintiff to discrimination on the basis of her pregnancy, sex and gender, the defendants violated § 8-107 of the New York City Administrative Code.

63.    In taking the above-described discriminatory actions, the defendants acted with malice and/or reckless indifference to plaintiff's rights under the City Law.

64.    As a result of the defendants' discriminatory acts, plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other monetary damages unless and until this Court grants relief.

65.    The defendant NYCHA is liable for the misconduct and above-described acts of its agents (including but not limited to defendant Stokes) under the doctrine of respondeat superior and vicarious liability.

WHEREFORE, plaintiff prays for judgment against the defendants, individually and severally, as follows: declaring that the acts and practices complained of herein are in violation of Title VII, § 1981, the Human Rights Law, and the City Law; enjoining and permanently restraining these violations of Title VII, § 1981, the Human Rights Law, and

9

the City Law; directing the defendants to make her whole for all earnings she would have received but for defendants' unlawful conduct, including, but not limited to, wages, pension, bonuses, and other lost benefits; directing defendant NYCHA to reinstate plaintiff, or if reinstatement is not possible, to award plaintiff front pay, including, but not limited to, wages, pension, bonuses, and other lost benefits; directing defendant NYCHA to pay plaintiff an additional amount as compensatory damages for her emotional damages; directing defendants to pay plaintiff an additional amount as punitive damages for their willful and/or reckless disregard for plaintiff's statutory rights; awarding plaintiff such interest as is allowed by law; awarding the plaintiff reasonable attorneys' fees, as well as necessary costs and disbursements incurred in the prosecution of the instant action; and granting such other and further relief as this Court deems necessary and proper.

Dated:          Brooklyn, New York
                July 25, 2018

                                        LAW OFFICES OF WALE MOSAKU, P.C.

                                        By:

                                        Wale Mosaku
                                        Attorney for the Plaintiff
                                        25 Bond Street, 3rd Floor
                                        Brooklyn, N.Y. 11201
                                        (718) 243-0994

To:

New York City Housing Authority and Douglas Stokes
Defendants
250 Broadway
New York, New York 10007

10

FILED: KINGS COUNTY CLERK 07/26/2018 01:52 PM
NYSCEF DOC. NO. 1

INDEX NO. 515265/2018
RECEIVED NYSCEF: 07/26/2018

Case 1:18-cv-00100 Document 1-2 Filed 08/21/18 Page 12 of 13 PageID #: 16

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------------X Index No.

SHAYNA S. TYLER,

                             Plaintiff,

    -against-

                                      ATTORNEY
                                      CERTIFICATION
                                      PURSUANT TO 22 NYCRR
                                      Part 130-1.1(c)

NEW YORK CITY HOUSING AUTHORITY and
DOUGLAS STOKES,

                             Defendants.

-------------------------------------------------------------------------X

The undersigned attorney does hereby certify:

That I am the attorney for the plaintiff and duly admitted to practice law before the
Courts of the State of New York. I do hereby provide this signed certification pursuant to
22 NYCRR Part 130-1.1 (c), that the papers that I have served, filed or submitted to the
Court in this action are not frivolous.

Dated:       Brooklyn, New York
              July 25, 2018

                            LAW OFFICES OF WALE MOSAKU, P.C.

                            BY: Wale Mosaku, Esq.
                            Attorney(s) for Plaintiff
                            25 Bond Street, 3rd Floor
                            Brooklyn, New York 11201
                            (718) 243-0994

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

Index No.

SHAYNA S. TYLER,

Plaintiff,

-against-

NEW YORK CITY HOUSING AUTHORITY and
DOUGLAS STOKES,

Defendants.

## SUMMONS AND COMPLAINT

LAW OFFICES OF WALE MOSAKU, P.C.
Attorney(s) for Plaintiff(s)
25 Bond Street, 3rd Floor
Brooklyn, New York 11201
(718) 243-0994

To:

Service of a copy of the within
is hereby admitted.

Dated:................ 200_

Attorneys for Defendant(s)